And Cozzi v. New York State Workers' Compensation Board, 21-812. Mr. Cozzi, come on up, please. Good morning. Okay, as you know, I'm a pro se. I'm supposed to speak up into the microphone so we can hear you. I'm the appellant, Guy Cozzi. I'm pro se. I have plead litigant. Take your time. Okay, so you know the case is about the Rockefeller Doctrine. Okay, I'm going to cover things that weren't covered in my principal brief. Now, a little louder. I'm going to cover things that weren't covered in my principal brief, because that was limited to 14,000 words. These are additional arguments I wanted to address with the court. I'm going to deal with Section 25 of the Judiciary Act, 1789, 28 U.S. Code 1257, and the Rockefeller Doctrine. I'll also deal with Article 1, Section 8, Clause 18, Necessary and Proper Clause, and the Federalist Papers, 80, 81, and 82. Okay, in 1789, the federal judiciary, consisting of inferior federal courts, was not yet set up. Okay, so there was no court to take appeals from state courts to federal courts other than SCOTUS, the Supreme Court. It was just an idea at that point in time. So, going back to something I mentioned in my principal brief, if the roots of the tree are poisonous, then all the tree branches and fruit are poisonous. So, Section 25 of the Judiciary Act of 1789 violates the Constitution, not then, but today. And 28 U.S. Code 1257 and the Rockefeller Doctrine also violate the Constitution. Now, let me walk you through this. The seeds of the tree were created by the U.S. Constitution in 1787. Those seeds were planted by Section 25 of the Judiciary Act of 1789. At that time, those tree roots were constitutional, and they adhered to the intent of the framers at that time. But over the next 200 years, as that tree grew, SCOTUS became overwhelmed with up to 8,000 appeals per year. And so those roots became poisonous, and they violate the Constitution. Now, it violates separation of powers, due process, and equal protection. How? Because SCOTUS cannot fulfill its enumerated power of appellate review of state court rulings due to the 1% appeal statistic. They take less than 1% of the cases. The rest of them are just denied. Now, in Marbury v. Madison, here's a quote. If he has a right and that right has been violated, do the laws of his country afford him a remedy? The very essence of civil liberty certainly consists in the right of every individual to claim the protection of all laws. Whenever he receives an injury, one of the first duties of government is to afford that protection. Okay. Now, let's go to Article I, Section 8, Clause 18, Necessary and Proper Clause. This was addressed extensively in Federalist 33 by Alexander Hamilton. Thank you. Okay, as I mentioned in my principal brief, the 1% appeal statistic of SCOTUS today is definitely not the checks and balances that the framers intended. The SCOTUS guidebook gives the answers. Your appeal is not a matter of right, but of judicial discretion. The primary concern is not to correct errors in lower court decisions. You have over a 99% chance that your appeal request will be denied. The denial signifies only that the court has chosen not to accept the case for review and does not express the court's view of the merits of the case. They're telling you right there. That's the situation when you appeal. So appealing to SCOTUS is like trying to win the lottery. The chances are practically zero if they're going to hear your case. No disrespect to SCOTUS. They're not superhuman. They get 8,000 appeals a year. They just can't handle it. And this goes back to the point where when the Judiciary Act was enacted in 1789, the inferior federal courts didn't exist to pick up the load. So the legislative branch consists of politicians elected by the people. The Necessary and Proper Clause of the Constitution allows those legislators to pass laws that are necessary and proper. Now, the federal judicial branch. May I ask you a question? Yes, sir. Did you appeal all of the adverse decisions against you that were made or rendered by the Workers' Compensation Board to a state court? I went through the whole process. From the state agency, through the state Supreme Court, through the New York Court of Appeals, all the way to SCOTUS. I brought up all these constitutions. Separation of powers, due process, equal protection. And that was in Rule 14GI of SCOTUS. So every time you lost in front of the Workers' Compensation Board, you appealed that? That's right. And the point to remember is that the state agency and the state courts did not address the constitutional violations in their rules. They just ignored it. So, all right. Ms. Scozi, may I ask you a different question? I understand you're nervous, so I don't want to be. But in a way, I think you shouldn't be. The argument that you're making is a very profound one. It's actually very reminiscent of an argument that the Supreme Court adopted with respect to habeas corpus. It's Justice Brennan's theory that the district courts needed to take up the slack because in criminal cases, there wasn't enough capacity in the Supreme Court to enforce people's constitutional rights. And so he adopted an expansive concept of the writ of habeas corpus. So this is not, and the argument you're making is one that academics have made in various contexts. But my problem is, isn't this an argument that has to be addressed to the Supreme Court? We have no power to say, we're going to disregard Rooker and Feldman because we think they're wrong. Even if we agreed with you, we don't have the power to do that. We have to follow the precedent of the Supreme Court. These are their cases that we're bound by. I mean, what would be your response? OK, well, habeas corpus deal with criminal cases. I understand. I'm just saying, your argument is a similar one to one that at one time the Supreme Court endorsed in the criminal context. It later changed its mind. But Rooker and Feldman, whether you like them or not, whether you have a strong or a weak academic argument that they should reconsider, we can't reconsider their case law. They tell us what the law is. We then apply it. So, I mean, do you understand? I mean, what is your argument? What is your response to the argument that, very interesting, that there is a theory on which Rooker and Feldman should be overruled, but we don't have the power to overrule it? Why do you think we would have the power to depart from a doctrine that the Supreme Court has repeatedly endorsed, though its contours have changed from time to time? Well, I mean, do the federal courts ever change precedent when it becomes what it needs to be changed? Sure. We can change our precedents, but we can't change the Supreme Court's precedents. But I've got to get there, and I've got to go through you guys. I don't know. I'm not a lawyer. I've got to go through you to get there. I'm happy to go there. So you understand that we may just be a stopping off point to your asking the Supreme Court to reconsider this. Yes, but you people can, I guess you're allowed to give your opinion if it disagrees with the Supreme Court. I don't know if you're allowed to do that. But if you agree with what I put in my principle brief, if you agree with what I'm going to cover, I would think you could issue a ruling, at least question the worker-fellman doctrine, and then I'll be happy to go back to the Supreme Court, whether or not they take the case out or not. I think we have your argument very, very, very well in mind. You've made it very persuasively and clearly. We'll reserve decision. You don't want to hear the rest of it? I think we have the benefit of your submissions. I think you've made your central argument. Can I submit a reply brief with these additional arguments? I think we've got the benefit of your argument. OK, thank you. I think we do. Thank you very much. The matter is submitted. The final matter on today's argument calendar, Lopez Cabrera v. Garland, 22954, is also on submission, is deemed submitted, and we'll reserve decision as to that. And that is, again, the final matter. We'll ask the clerk to adjoin court. Thank you. Court is adjourned.